40 C.C.P.A. (Patents)

### Application of HILLERICH & BRADS-BY CO.

### Patent Appeal No. 5968.

United States Court of Customs and Patent Appeals.

April 15, 1953.

Rehearing Denied May 29, 1953.

Arthur F. Robert, Louisville, Ky. (J. H. Kilcoyne, Washington, D. C., of counsel), for appellant.

288

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

COLE, Judge.

Placing reliance upon the provisions of section 2(f) of the Trade Mark Act of 1946, 15 U.S.C.A. § 1052,[1] the appellant sought trade mark registration (on the Principal Register) of a geometrical configuration, an oval line, for use on baseball, softball, and miniature bats.

In proceedings before the Patent Office, the applicant established that it is the largest manufacturer-distributor of bats in the United States, furnishing approximately 95% of all major league bats and more than 90% of all organized baseball bats, and furthermore, that its largest competitor is relatively small. In 1893, the applicant adopted and commenced to use the trade mark "Louisville Slugger" on baseball bats, registering that mark in 1894. The oval shaped impression now in question was first used in 1893, but was restricted, at first, to use on baseball bats bearing the "Louisville Slugger" mark. In this instance, the oval was used to encircle the aforesaid word mark, and in 1906 a trade mark registration was issued to applicant covering this usage. The applicant thereafter registered other trade marks in connection with baseball and like bats, the oval here again being included as a part thereof, i. e., to enclose the word mark as well as other printed matter.

The oval has never, and is not now, being used apart from the word marks, but in all instances, except those later to be discussed, is found to enclose within it the word trade marks of the applicant.

The specimens of record filed with the present application, representing marks actually used in commerce, show the oval design encircling a registered trade mark.

Somewhat illustrative is the drawing which discloses the mark "Louisville Slugger," the firm name of the applicant, the words, "Made in U. S. A." and "Louisville, Ky.", all encircled by the oval impression.

It is not claimed that the oval is inherently distinctive, but distinctiveness in and of itself is claimed to be established on the basis of proof submitted, principally by the testimony of numerous witnesses in a prior opposition proceeding (of record herein) and relied upon by the applicant. The issue presented in this appeal is not identical to the issue presented in the incorporated record. Here, we are dealing exclusively with the effort to secure a trade mark for the oval as such. In the opposition proceeding, the applicant applied for a mark, oval in shape, but with accompanying words. The opposition thereto presented by the applicant herein featured its long use of an oval with such well known word marks as "Louisville Slugger," "Powerized," "Cracker Jack," "Leader," "Champion," "Semi Pro," "King of Field," "Safe Hit," and others, either inside or alongside the oval. It is clear from a reading of the notice of opposition that any thought of listing the naked oval as an established mark, and subsequently addressing the testimony to that as a fact, was secondary to the controlling and almost only claim, i. e., the use of the oval with words as stated. It is significant also that the applicant's mark in that proceeding embodied words in combination with an oval, as distinguished from an oval alone.

In the instant record, there are two affidavits of employees of the applicant company supplementing certain of the proof in the record to which we have referred. The issue presented for our consideration herein is whether or not the proof submitted supports the allegation that the oval impression, in itself, is recognized by the bat conscious public as a distinctive trade mark indicating origin in the applicant, Hillerich & Bradsby Company.

[1] "Except as expressly excluded in paragraphs (a), (b), (c), and (d) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. * * *"

The assistant commissioner, in affirming the decision of the examiner denying registration to the involved mark, made the following pertinent observations:

"In no case, so far as the exhibits show, has the oval been used apart from other matter with which it is used on the various bats manufactured by the applicant. In each instance the oval is shown as used for the framing of matter used to identify the origin of the goods, and in every instance the printed matter is so coordinated with the oval in configuration and over-all design that to separate any one part of the entire mark from another, especially the oval framing, and hold that such part is the applicant's trade-mark would amount to mutilation of the mark as used. The oval, unless used alone or otherwise prominently displayed so as to stand out distinctively so that it may be recognized by purchasers as a trademark, as distinguished from mere framing for the mark as a whole, would ordinarily have no trade-mark significance. Applicant has not so used the oval as its trade-mark on the basis of the testimony and specimens submitted, nor has it been shown to my satisfaction that the oval, as used by the applicant, has acquired trade-mark significance."

Concededly, buyers never see applicant's bats with only the oval thereon. Consequently, it is clear that usage of the oval per se has never been attempted as an origin-designating medium. The oval, not being inherently distinctive, must acquire that quality through such usage and association as will establish in the minds of the buying public that the oval on a bat clearly indicates a bat manufactured by the applicant. Proof indicative of the fact that the oval has enjoyed long and extensive usage in connection with other registered word trade marks does not fulfill that burden, but on the contrary would appear to make the applicant's task more difficult.

The applicant believes that the mark has become distinctive, i. e., the oval alone, and

that the testimony offered in the incorporated record overwhelmingly supports this conclusion. The examiner, however, in appraising the evidence, said:

"* * * the applicant has attempted to assume this burden [of proving distinctiveness] by making of record the transcript of a rather voluminous opposition proceeding, and by inclusion of certain affidavits from the officers of the applicant company. Such persons as are found in either category of the record are definitely 'interested parties' and 'specialists', and their opinions cannot be said to be indicative of the reaction of the public generally. There is nothing which would indicate that any members of the general purchasing public would be similarly aware of any of the attributed 'trade-mark meanings' given by the selected parties to the use of the oval design framing the word-marks of the applicant."

In furtherance of this view, the assistant commissioner said:

"The testimony offered in this case by various dealers in applicant's goods, and others as well, amounts to nothing more than statements of opinions in regard to what those buying bats might consider as the applicant's trade-mark. In most instances, such replies of the witnesses are in response to leading questions asked of them. Such testimony is considered unconvincing in that it fails to establish that purchasers, as distinguished from dealers, actually recognize the oval apart from other matter appearing therewith * * *".

We have examined the incorporated record with care. Twenty-eight witnesses testified by deposition. This number included six employees of the applicant, the remainder being men having a substantial connection with the baseball world, such as book publishers, players, coaches, sporting goods manufacturers and representatives thereof, buyers, distributors, and dealers in sporting equipment. Ample experience in their respective positions is recognized and

their opinions may be said to be representative of their respective counterparts in an adequate cross-section of the nation.

The applicant states that the primary purpose of taking the depositions of its own employees was to establish long usage of the mark and extensive advertising emphasis on the oval. While the record does not contain any actual exhibits of such advertising, the testimony of these witnesses indicates that the oval was widely featured in certain displays. Attention was drawn to the oval as the "Louisville Slugger oval", "Hillerich and Bradsby oval", "Famous oval", etc.

Witness Hillerich, Executive Vice President of applicant, testified, in part, as follows:

"Q. Now in your advertising do you make any attempt to emphasize the oval trade-mark? A. We have always tried to emphasize the oval with the 'Louisville Slugger'; we show our brand as we place it on the bat.

"Q. Now what form does your emphasis on the oval take? A. Our emphasis on the oval is primarily on the 'Louisville Slugger' trade-mark within the oval, the Hillerich & Bradsby Co. trade-mark, and other names, and also just the plain oval."

An analysis of the testimony bearing on applicant's advertising indicates, quite obviously, that a concerted effort has been made to familiarize the public with the significance of the oval, but it is well to note that principal emphasis is afforded to the oval in connection with the "Louisville Slugger" bat, i. e., the "Louisville Slugger oval." The degree of success that the advertising has achieved in this respect is, of course, difficult of accurate appraisement, but witness Beard, a sporting goods distributor, testified, in part, as follows:

"Q. Are you familiar with the trade-mark 'Louisville Slugger'? A. Yes, sir.

"Q. What would say as to the trade-mark, if it has fame? A. I would say that 95 to 98 per cent of the public calls for 'Louisville Sluggers.'

"Q. Would you say that the 'Louisville Slugger' is the most famous bat in the United States today? A. That is right."

As previously noted, primary emphasis in advertising the oval is in connection with "Louisville Slugger" bats. In stating that 95 to 98 per cent of the public ask for "Louisville Slugger" bats, applicant's witness, Beard, indicates that little, if any, reference is made to the "Louisville Slugger oval" bat by the purchaser. Further, such testimony tends to establish that applicant's advertising efforts in connection with the oval have largely been in vain, particularly insofar as educating the mind of the buying public to associate the oval alone with the bats of the applicant company is concerned. In this respect, the solicitor stated:

" * * * Surely if 95 to 98 per cent of the public ignore the oval design completely in asking for appellant's goods and call for them by the name in the oval, it is manifest that the oval has not acquired trade mark significance and cannot be distinctive of applicant's goods. * * * "

Counsel for applicant featured in his brief, and also during oral argument, excerpts of evidence submitted by witnesses Chambers, Burghardt, and Braunstein as contradicting these findings and conclusions. We cannot accept this viewpoint. The evidence thus offered does not impress us as being anywhere close to that appraisal. The answers given, as was stated by the assistant commissioner, were in response to extremely leading questions, due evidently to the fact that counsel for the objecting party was not present and did not participate in the proceedings, and the testimony thus adduced is not at all convincing that their reference to the oval was not intended to include words associated therewith. We cannot permit the statements by the few witnesses to which we have referred to control the meaning and purpose of the entire record, feeling as we do that the overwhelming weight of all the evidence presented supports the contrary view.

We note also that applicant manufactures bats for certain independent concerns and "permits" the latter to use the oval design in precisely the same manner that applicant employs the oval, i. e., to enclose word marks of said independent companies. That the applicant would sanction such a practice, alleging as it does that the oval is distinctive of its bats, is clearly a circumstance detracting from the validity of its contention herein. The applicant claims, however, that its independent customers feel that, in view of the unexcelled reputation of bats manufactured by Hillerich & Bradsby Company, the oval thereon will materially aid in the sale of the product to the buying public. This, of course, presupposes that the public is fully acquainted with the significance of the oval alone as indicative of origin in the applicant. The fallacy of such a supposition finds appropriate expression in the solicitor's brief, as follows:

"* * * appellant has no right in the marks 'J C Higgins', 'James W. Brine', 'Honus Wagner' and 'Coast To Coast Stores', each enclosed in an oval design, these marks being used for identical goods. Apparently, these independent parties have used the oval design with the full approval and sanction of appellant. The use of this design by others is likewise indicative of the fact that the oval cannot indicate origin of the goods in appellant. From statements in the record it would appear that bats sold by Sears, Roebuck & Co. bear the mark 'J C Higgins'. Customers of that huge merchandising concern seeing goods advertised in the catalogue * * * under the name 'J C Higgins' would hardly associate such goods with appellant, merely because the name is enclosed in an oval as shown by the submitted specimen (R. 5). The purchasing public has been taught or educated to associate certain names with Sears, Roebuck & Co. and whether the bats sold under the 'J C Higgins' name were made by appellant and the oval placed thereon by it would be something the purchasing public would

have little likelihood of knowing. The same considerations apply to the other marks, though probably in lesser degree because of the difference in size and scope of the owners of those marks. * * *"

In conclusion, it is our considered opinion that the evidence fails to establish that the bat-buying public attaches the claimed trade mark meaning to the oval as used on applicant's product, and we therefore deem it unnecessary to proceed further with a discussion of other grounds assigned by the tribunals below in rejecting the application on appeal.

For the reasons hereinbefore stated, the decision of the assistant commissioner is affirmed.

Affirmed.