**Application of SWIFT & CO.**
**Patent Appeal No. 6141.**

United States Court of Customs
and Patent Appeals.
July 1, 1955.

Roy G. Story, Chicago, Ill., Earl G. Spiker, Washington, D. C., and Edward C. Vandenburgh, Chicago, Ill., for appellant.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, Acting C. J., and JOHNSON, WORLEY, COLE, and JACKSON, retired, Judges.

COLE, Judge.

The Examiner-in-Chief of the United States Patent Office, acting for the Commissioner of Patents, has held that appellant's alleged trade-mark is not registrable on the Principal Register under the Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq. In his opinion so ruling, Ex parte Swift & Company, 100 U.S.P.Q. 36, the alleged mark is described as follows:

"The product on which the mark is used is a household cleanser of the type sold in round cans the tops of which can be perforated to provide holes through which to shake the powdered material. The specimens submitted with the application consist of the labels which are placed around and cover the cylindrical sides of the cans. These labels, when viewed as on the cans, show a horizontal band of polka dot de-

sign in red background and white dots covering the lower third of the label and a similar but narrower band around the upper part of the label; the band between these two is white, on which appears the words 'Swift's Cleanser,' repeated, and other printed matter. The polka dot design of the lower band is interrupted by the legend 'Pick the Polka Dot package cleanser,' in two lines with the word 'cleanser' beneath the words 'polka dot.' The drawing which accompanies the application shows only the polka dot design of the label placed flat, namely the two rectangular polka dot bands separated by the white band, and omits all printed matter. There is no indication of color on the drawing."

The Examiner-in-Chief was of the opinion that appellant's polka dot banding was merely the background ornamentation of its label and, as such, could not function as a technical trade-mark, citing In re Burgess Battery Co., 112 F.2d 820, 27 C.C.P.A., Patents, 1297.

A specimen label (no colors shown) with the alleged mark thereon as actually used by appellant and the drawing accompanying the application for registration are reproduced herewith.

Our concern on appeal here from the decision of the Examiner-in-Chief being solely with appellant's right to register under the Trade-Mark Act of 1946, the issue thus presented is whether appellant's polka dot banding is a trade-mark within the meaning of the statute and, if it is, whether it is entitled to be registered on the Principal Register.

Section 45 of the Act of 1946, 15 U.S.C.A. § 1127, provides:

"The term 'trade-mark' includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others."

The above statutory concept of a trade-mark has long been recognized by the courts and is not unlike that given by the Supreme Court of the United States in Columbia Mill Company v. Alcorn, 150 U.S. 460, 14 S.Ct. 151, 152, 37 L.Ed. 1144, decided in 1893, wherein the court said "That to acquire the right to the exclusive use of a name, device, or symbol as a trade-mark, it must appear that it was adopted for the purpose of identifying the origin or ownership of the article to which it is attached, or that such trade-mark must point distinctively, either by itself or by association, to the origin, manufacture, or ownership of the article on which it is stamped. It must be designed, as its primary object and purpose, to indicate the owner or producer of the commodity, and to distinguish it from like articles manufactured by others."

Appellant argued below, as it does here, that its mark is the symbol corresponding to the word "polka dot"; that it was adopted and has been used in trade in its present form since 1949 to identify and distinguish its product; that such trade-mark use is apparent from the fact that the labels carrying the design contain the phrase "Pick the Polka Dot Package;" that this phrase has been used extensively in advertising its product;

and that the public considers the polka dot design as the feature distinguishing such product from the goods of others.

We think that in a trade-mark sense appellant's polka dot banding is an artistic and unique design or pattern which may be constituted a trade-mark "device" within the meaning of Section 45, supra, if it is used primarily to perform the office of a trade-mark and is, in fact, by virtue of any distinctiveness it may possess, capable of so doing.

In the case of In re Burgess Battery Co., supra [112 F.2d 822], the mark sought to be registered was for use on dry batteries and flash light cases and consisted of alternating black and white stripes, unrestricted as to number or length or as to the shape or size of area covered by the striping. The specimens accompanying the application showed the stripes applied entirely about the goods and packages by placing thereon labels upon which the striped design was printed. In holding such mark to be unregistrable, we said:

"We think it is apparent from the record that appellant's alleged trade-mark is a mere 'dress' which gives a distinctive external appearance to appellant's goods; that it is such distinctive appearance which is recognized by 'some' of the purchasing public as indicating appellant's goods; and that appellant's design is merely a colored label or dress of black and white alternating stripes, the office of which (design) is not to point out distinctly the origin or ownership of the articles to which the label is affixed. * * *" See also In re Burgess Battery Company, 142 F.2d 466, 31 C.C.P.A., Patents, 1039.

While in the cited case the striped design was merely ornamental dress which was devoid of trade-mark significance, it does not thereby follow that a trade-mark device only incidentally ornamental, and in a sense decorative of the label upon which it appears, is not

entitled to registration. Manifestly, if a distinctive trade-mark device or symbol is adopted and used primarily for the purpose of identifying and distinguishing a product, and it is capable of so doing, the mere fact that it renders the label to which it is applied more ornamental than it would otherwise be without that device thereon does not *per se* dictate a conclusion that it has no trade-mark function. In a limited sense, every device or symbol used as a trade-mark constitutes a part of the dress of the article to which it is applied, but it is the conventional ornamentation or mere surface decoration as such that cannot be monopolized under a claim to trade-mark signification. The Burgess Battery case, supra, stands for the proposition that that which is only the attractive dress of an article, although it be distinctive in its appearance and sometimes recognized by purchasers as an indication of origin, does not have, as its primary function, an origin-authenticating purpose, and is hence not a trade-mark entitled to federal registration under the statute. Since the line distinguishing between mere ornamentation and ornamentation which is merely an incidental quality of a trade-mark is not always clearly ascertainable, the application of legal principles to fit one situation or the other requires proper reflection upon the impression likely to govern the ordinary purchaser in the market place. For that reason, the merits of each case of the character here presented must be individually and accordingly adjudged.

In its brief on appeal, appellant refers to the fact that a great deal of purchasing in retail outlets is of a casual nature (particularly in self-service types of stores) and, with regard thereto, it makes this observation:

"* * * Here the purchasers often engage in 'impulse' buying. If their attention is caught by an item for which they have a need or have been induced to believe they have a need, as for example by advertising, they will pick up the item on this impulse even though the item was not one for which they entered the store to buy.

"In order for this to happen, however, it is imperative that their attention be focused on the item sufficiently for the 'impulse' to occur. The focusing process often takes place at a time when the individual is too distant from the object to read any wording thereon. If the individual sees the item at a distance and is able to identify it by some symbol or device on the object that stands out at such a distance where the wording cannot, that symbol or device becomes the means by which the object is identified and the factor by which the impulse to purchase it is induced or occasioned.

"This identification at a distance can be one or a combination of two kinds of identification. In the first place, it can be an identification of the nature of the product. Naturally the trade-mark function of indicating origin does not become a part of this identification of the product. However, in addition to the identification of the product, the symbols or devices may be such as to distinguish the product of a particular manufacturer from similar products of other manufacturers and thus serve as an indication of origin. When this is possible, and that was the intention in the adoption, that symbol or device clearly responds to the definition of a 'trade mark'. It is not important that the purchaser think to himself 'is this symbol or device a trade mark'. The significant question is was the symbol or device put on this object to enable the purchaser to pick it out and distinguish it from the goods of others, and is the purchaser able to so identify the object by means of this symbol or device."

It is axiomatic, of course, that a trade-mark must be distinctive in order to accomplish its function of indicating

the producer of the article to which it is applied, and, with particular regard to symbols and devices, should be displayed with such prominence as will enable easy recognition. That appellant's design will instantaneously be recognized by the ordinary purchaser as a pattern of polka dot banding cannot admit of serious dispute. While to some extent it may thus be considered a common-place design, we believe it is distinctive and does not retain its purely abstract significance as a common and merely ornamental design when applied in its particular form to the label of a can of household cleanser. We think a definite and lasting impression will be created by use of the design in association with appellant's product whereby the average consumer will regard it as an unmistakable, certain, and primary means of identification pointing distinctly to the commercial origin of such product. The fact that the design may incidentally add to the attractiveness of appellant's label, and hence impart a certain distinctive appearance thereto, does not, in our opinion, vitiate its primary significance.

The Examiner-in-Chief also cited Campbell Soup Co. v. Armour & Co., 3 Cir., 175 F.2d 795, 798, as authority for denying registration to appellant's trademark. In that case, the Circuit Court of Appeals for the Third Circuit was called upon to consider whether the plaintiff had exclusive trade-mark rights to a red and white label used on food products. One portion of the label (substantially half) was white and the remainder red, the colors appearing on the label in the form of an endless band running around the entire container. After stating the well settled rule that trade-mark rights cannot be acquired in color alone, the court said:

"Plaintiffs cite to us a number of cases, however, in which various color combinations as trade-marks have been upheld. Here, too, the law is well settled. Color is a perfectly satisfactory element of a trade-mark if it is used in combination with a design in the form, for example, of a picture or a geometrical figure. The Barbasol case is typical [Barbasol Co. v. Jacobs, 7 Cir., 1947, 160 F.2d 336]. Here was a package using several colors but in a distinct and arbitrary design. The mere division of a label into two background colors, as in this case, is not, however, distinct or arbitrary, and the District Court so found.

"When we say that plaintiffs cannot have exclusive right to a trade-mark of a red and white label, we are by no means denying their right to acquire a trade-mark when the color is combined with other things in a distinctive design. * * *"

We think it is apparent that the legal principles in the above case have no application to the factual situation here. While as actually used the banding of appellant's design appears in red and the polka dots thereon imposed are in white, these colors act only in association or combination with a design which is in itself distinctive and arbitrary as applied to household cleanser. As indicated, we think appellant's polka dot banding design is a trade-mark "device" distinguishing its product from articles of like kind sold by others, and that it is so recognized by the public as a primary means of indentification. That it is entitled to registration on the Principal Register is clear from Section 2 of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1052, which provides:

"No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it— * * *."

Several sub-sections of Section 2 which there follow prohibit registration on the Principal Register of certain specified subject matter. None of these sub-sections are applicable here, and no issue has been raised with regard thereto.

For the reasons hereinbefore stated, the decision of the Examiner-in-Chief,

acting for the Commissioner of Patents, is reversed.

Reversed.

JOHNSON and WORLEY, JJ., dissent.

JACKSON, J., retired, recalled to participate herein in place of GARRETT, C. J.