47 CCPA

## Application of McILHENNY COMPANY.

### Patent Appeal No. 6556.

United States Court of Customs and Patent Appeals.
May 24, 1960.

Mead, Browne, Schuyler & Beveridge, William E. Schuyler, Jr., Andrew B. Beveridge, Washington, D. C. (Francis C. Browne, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C., for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges.

MARTIN, Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board affirming the trademark examiner's refusal to register on the Principal Register for pepper sauce a mark which "consists of a capped bottle of pepper sauce."

The specimen filed with the application for registration is a bottle having a cylindrical body about 3 inches high and about 1½ inches in diameter, and a tapering portion terminating in a cylindrical neck about ¾ inch in diameter and which, including a threaded mouth portion, is about 2¼ inches in height. Adjacent the threaded mouth portion is an inverted truncated conical portion somewhat wider at its base than the neck, and which tapers to where it meets said threaded mouth portion. The bottle is topped with an octagonal cap having the name "McIlhenny" appearing in raised letters on its top. The bottle's bottom is inscribed with appellant's "Tabasco" trademark. The drawing of that sought to be registered shows only the bottle and cap configuration. Use of the bottle and its accompanying cap in commerce since March 12, 1927, has been alleged.

It is stated to be used "by forming a container and cap as shown in the drawing and filling it with pepper sauce * * *." The board said "That a bottle of a product cannot be a trademark for the product is too obvious to require discussion," but found that both the examiner and the applicant had treated the application as if it were one to register the configuration of a bottle for use with pepper sauce. Accordingly, the board also so treated the application.

The board's statement of the principal issue was

"There is left for consideration only the question of whether the conformation of applicant's capped and unlabeled bottle is distinctive of applicant's pepper sauce." [Emphasis ours.]

The answer to that question was that the "record does not support a finding that the bottle and cap—without the label, neck wrapping and, above all, the well-known mark 'Tabasco' is a mark identifying and distinguishing applicant's goods." Additionally, the board said "There is nothing particularly distinctive about either the shape or size of the bottle or the closure." The case of Ex parte Haig & Haig Ltd. [the "Pinch" bottle case], 118 USPQ 229, was held not to be controlling in appellant's favor.

It is, of course, appellant's position that its bottle is registrable on the Prin-

cipal Register. Its argument proceeds as follows:

■ 1. A bottle may be a trademark, i. e., a symbol or device under § 45, 15 U.S.C.A. § 1127.[1] The Haig & Haig case supports such a conclusion and to this the Patent Office is agreed.

2. All that an applicant need show under § 45 is that the symbol or device be "adopted and used by * * * [it] to identify its goods and distinguish them from those manufactured or sold by others."

3. Since appellant has adopted and used the bottle conformation with the intent[2] that it identify its goods and distinguish them from those of others, § 45 is satisfied, it is a trademark, and it is entitled to registration unless barred by § 2, 15 U.S.C.A. § 1052.

4. The preamble to § 2 states "No trade-mark by which the goods of the applicant *may* be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it * * *." [Emphasis ours.]

5. Since the bottle is a trademark and the goods of appellant "may be distinguished" from the pepper sauce of others via such a bottle, it is registrable. Registration may not be refused "on account of its nature," i. e., merely because it is a bottle.

Appellant argues that the board's inconsistent rationale is erroneous. Since the statute requires only that a mark be capable of distinguishing the goods of one from those of another, the board's requirement that the bottle must be proven to be "distinctive" of appellant's pepper sauce is alleged to be extra-statutory and improper. Such a requirement, it is said, is proper only when registration is sought under Sec. 2(f), which section demands a showing that a mark "has become *distinctive* of the applicant's goods in commerce." [Emphasis ours.]

The solicitor has stated that appellant's bottle does not have the "obvious attributes" of a trademark and, therefore, proof is required to show that it is. In other words, the position taken by the Patent Office in its brief and at oral argument is that a mere application for registration of a bottle does not make out a *prima facie* case entitling an applicant to registration of that bottle on the Principal Register. Additionally, the solicitor has questioned the propriety of allowing the registration for pepper sauce of a mark which consists of a bottle of that pepper sauce, restating the board's position that a bottle of a product cannot be a trademark for the product.

Under the Lanham Act, "any word, name, symbol, or device or any combination thereof" which is distinctive *per se* and identifies an applicant's goods and which does not fall within one of the prohibitions of section 2 is entitled to registration on the Principal Register, assuming, of course, procedural requirements are fulfilled. However, this is a far cry from saying that a non-distinctive bottle without an identifying label, containing a product is entitled to registration on the Principal Register, in the absence of convincing evidence that the naked unlabeled bottle containing the product does in fact identify and distinguish applicant's goods, merely because it is demonstrated that there is and has been for many years the intent to distinguish and identify the goods by that bottle.

It is claimed that a *prima facie* case has been established by the adoption, use, and intent to distinguish the goods by the bottle regardless of the lack of ap-

---

1. *"Trade-mark.* The term 'trade-mark' includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others."

2. Appellant especially relies upon certain judgments rendered in unfair competition suits, its use of two-dimensional representations of a bottle in advertising and on boxes containing the bottle with the pepper sauce, etc., to demonstrate this intent.

parent distinctive features from which it could be assumed that the bottle could identify appellant's goods in the public's mind. Under these circumstances appellant states that registration cannot be withheld unless the Patent Office discharges its burden of showing that the bottle is not distinctive and does not identify its goods. No authorities are cited for this proposition and we do not agree with it.

■■ The fallacy in appellant's position resides in its misconception of the Lanham Act definition of a trademark. Section 45 requires not only the adoption and use of the mark but that it does in fact identify the goods and "distinguish them from those manufactured or sold by others." This requirement is the basic element of a trademark. The mere intent of an applicant will not convert an inherently non-distinctive bottle into a trademark. Without an applicant's fulfilling the requirements of section 2(f), registration on the Principal Register is only proper when the subject matter is a distinguishing and identifying trademark *per se* and obviously does identify the goods and distinguish them from the goods of others. Of course, under section 2(f), if the applicant offers clear and convincing evidence that an otherwise non-distinctive trademark, such as this bottle, has in fact become distinctive of applicant's goods in commerce and does identify them, registration on the Principal Register is warranted.

■ In this case, appellant is endeavoring to achieve registration on the Principal Register without such proof. Here we have a little bottle with no features particularly connecting it with the pepper sauce except the pepper sauce itself which contributes only to giving the bottle and sauce together the characteristic of being descriptive. The bottle and its closure have no distinctive features upon which this court could predicate a conclusion that the device has trademark significance *per se*. Consequently, we believe the board was correct in not approving registration of this device on the Principal Register on this record.

Appellant relies heavily on Ex parte Haig & Haig Ltd., supra, wherein registration of the well-known "Pinch Bottle" as a container for Scotch whiskey was granted. However, there the bottle was registered first on the Supplemental Register[3] and achieved registration on the Principal Register because the Assistant Commissioner found

"* * * that applicant adopted a bottle of 'original, distinctive and peculiar appearance' to identify its whisky and distinguish it from the whisky of others; the bottle became known to the trade, to consumers and to the public generally as the 'Pinched Bottle' at least as early as 1912; the whisky put up in such bottles became known to the trade, to consumers and to the public generally as 'Pinched Decanter' or 'Pinched Bottle' whisky; purchasers ordered 'pinched Decanter' or 'Pinched Bottle' whisky expecting to receive applicant's whisky; and from about the turn of the century until 1952, there was no way of identifying or ordering applicant's 'Pinched Decanter' or 'Pinched Bottle' whisky other than by describing the conformation of the bottle. The public for many years used the description of the conformation or contour of the bottle to ask for the particular brand of applicant's whisky. This description—'Pinched' or 'Pinch'—furnished applicant with a word which was formally adopted and used as a word trademark in 1952. * * *"

Obviously, a very different factual situation exists here.

Appellant has introduced in evidence many pictorial exhibits depicting its bottle, upon which is a label featuring applicant's registered trademark "Tabasco" and also prominently displaying the words "McIlhenny Company." Also, appellant has introduced into evidence un-

3. Supplemental Reg. No. 576,542 issued June 23, 1953.

dated unsigned excerpts from affidavits which indicate that headwaiters in various restaurants think that "Tabasco" sauce is superior to other pepper sauces. One affiant stated that customers identified the sauce as that of appellant by means of the bottle. That affidavit is dated January 19, 1900 and refers to appellant's predecessor bottle.

If the subject matter of this appeal had the required *inherent* trademark significance to warrant registration without qualifying under section 2(f) such evidence would be unnecessary. By its very introduction, it is admitted that the device is not intrinsically distinctive.

█ Even if evidence of this type could establish the inherent identifying capabilities of a device to warrant its registration on the Principal Register without complying with the provisions of section 2(f), the evidence introduced in this case does not accomplish that purpose.

█ Furthermore, this evidence does not convince us that the general public has accepted applicant's unlabeled bottles *per se* as identifying appellant's product so as to warrant registration of the bottle on the Principal Register even under section 2(f).

For these reasons we affirm the decision of the Trademark Trial and Appeal Board.

Affirmed

WORLEY, C. J., concurs in result.

RICH, Judge (concurring).

While I agree in general with Judge MARTIN'S opinion, I wish to mention certain salient features of this case which influence my decision not referred to therein.

The goods named in the application is "Pepper Sauce." Pepper sauce is a liquid and of necessity is sold in a container. The record shows the marketed form of the goods to be glass bottles of pepper sauce containing 2 fluid ounces. Thus, what is marketed is not just pepper sauce but, more accurately, 2-ounce bottles of pepper sauce. Accepting the allegation of the application as true, the applicant has used the same cap and bottle since 1927. As marketed, the bottle has a printed paper body label, a printed foil neck label, and the red plastic screw cap has "McIlhenny" on its top in raised letters. All of these indicate the origin of the goods one way or another.

Applicant wants to register *as a trademark* "a capped bottle of pepper sauce, the configuration of the cap and bottle being that shown in the drawing." So says the application, which continues, "The mark is used by forming a container and cap as shown in the drawing and filling it with pepper sauce * * *." It might be added that after filling the bottle the cap is screwed onto it. The drawing, as is implied by the above quotation, shows *only configuration* of the bottle and cap, devoid of labels, names or color; but from the description in the application one may further infer what is the fact, that the bottle is of transparent glass and the brownish-red pepper sauce is visible through it. In fine, what is alleged to be a trademark and what is sought to be registered as a trademark is *the goods themselves*, stripped of all labels or other indications of origin. Appellant's brief leaves no doubt about this in saying, "applicant's trademark * * * is the physical object, i. e., the capped bottle, not a two-dimensional reproduction thereof * * *."

It has long been the law that a mere pictorial representation of goods cannot be registered as a trademark for the reason that it is descriptive of the goods and does not indicate origin. Jantzen Knitting Mills v. West Coast Knitting Mills, 46 F.2d 182, 184, 18 CCPA 843, 846; In re The Pierce Arrow Motor Car Co., 55 F.2d 434, 19 CCPA 999; In re Motz Tire & Rubber Co., 40 App.D.C. 487, 1913 C.D. 459; In re Scholl Mfg. Co., 50 App.D.C. 46, 267 F. 348; In re Underberg-Albrecht, 120 USPQ 495 (Com'r); Shoemaker on Trademarks (1931) p. 238; Derenberg, Trade-Mark Protection and Unfair Trading (1936) p. 309; Amdur,

Trade-Mark Law and Practice (1948) Chap. III, § 4; and Vandenburgh, Trademark Law and Procedure (1959) p. 68.

Appellant has attempted to persuade us that its alleged trademark should be registered because there is no express statutory prohibition in section 2 which applies here and hence, under the opening paragraph of section 2, registration cannot be refused. I consider this argument unsound because there is an applicable statutory prohibition. Section 2(e) forbids the registration of "a mark which * * * is merely descriptive" of the applicant's goods. If a picture of the goods is descriptive of them, *a fortiori* the goods themselves are descriptive. It may sound foolish to say that goods can describe themselves but it is no more foolish than the contention that goods are their own trademark. I think the goods are the ultimate in descriptiveness of the goods. Nothing describes them better. No words or pictures could be as accurate. Instead of symbols we have the thing itself. It is like a personal appearance. I therefore believe that section 2(e) forbids registration of the goods themselves, at least if section 2 applies at all. It is a little difficult to conceive of the goods as a mark which can be "applied to the goods" as provided in section 2(d); but so is it a little difficult to conceive of the goods, in the words of the first clause of section 2, as a "trade-mark by which the goods of the applicant may be distinguished from the goods of others," as appellant asks us to do. We can as well do the former as the latter.

This raises the interesting question whether the goods *can* be their own "trademark," in the sense of that term as used in section 2. The board alone has passed on that question by saying merely, "That a bottle of a product cannot be a trademark for the product is too obvious to require discussion." Thereupon it proceeded to a consideration of the case on the basis of the examiner's erroneous view that the application was one to register the conformation of the bottle and cap. The majority opinion here has considered the case on the same basis. This leaves the issue raised by what the Solicitor refers to as "The first aspect" of the board's decision, quoted supra, undecided. Reasons of appeal Nos. 2 and 3 are directed to that aspect but appellant's brief, while mentioning them, assumes the issue to be registrability of the container configuration. Of course, if the latter is not registrable *per se*, it would not become so by filling the container with pepper sauce so a decision on this question will decide the issue before us and the question whether goods can be their own trademark is left to some later case in which that issue can be fully debated. Personally I doubt that goods *in their entirety* can be their own trademark. If that is what the board meant in the first aspect of its opinion, I am inclined to agree. At the same time some *aspect* of the goods may be a trademark. But in such a case the application must specify what aspect constitutes the mark.

Considering the configuration of the container by itself (notwithstanding the insistence of the application that it is filled with pepper sauce), except for its top it has one of the commonest shapes known to the bottle art, which would not indicate anything to anyone. Due to the fact that "Tabasco" is so hot it must be dispensed by the drop, the bottle has a shaker top with a small hole in it, the top being provided with a molded thread for the cap. The top of the bottle neck proper, which has conventional proportions, is sloped upwardly to the unusually small opening in what appears to me to be an obvious way, all of these minor modifications of conventional and commonplace features apparently being dictated by functional considerations. The molded plastic cap is of a size to fit the bottle and the hexagonal shape of its exterior is one of the common expedients of the bottle cap art for giving one a grip on it. The ensemble may be the only one of its kind in the strict sense and those who know "Tabasco" well may recognize it, unfilled and unlabeled, in the sense that a mother can recognize her child, a

man his dog, or a cavalryman his horse, so as to be able to pick it out from a multitude of similar things. But I do not think this is enough to transmute this container or any part of it into a "trademark." True trademarks hit one in the eye.

If the potentiality of distinguishing appellant's sauce from the sauces of others exists at all in this capped bottle, it necessarily resides in very minor and relatively inconspicuous features because the body and neck of the bottle are commonplace in shape and proportions. Appellant includes in the record alleged copies of Texas and New Jersey court decrees in 1898 and 1900 involving imitation of its bottles. But the characteristic distinguishing features of the early bottles then in use are not present in the bottle here involved, and vice versa. On the basis of taking judicial notice of the common shapes of bottles and caps alone, I fail to see any feature of the naked capped bottle which *prima facie* has sufficient distinctiveness to function as a trademark. This is sufficient ground on which to affirm the board's holding that it is not a mark identifying and distinguishing applicant's goods.

If appellant's advertising, as presented by the record, had as its purpose, as is alleged, the generation of public recognition of the container configuration, it was badly misdirected. In each case the labels overwhelm the bottle configuration in prominence and the emphasis of the advertising copy is all on the word mark "Tabasco."

The capped bottle in this case is, as a matter of fact, mere background for the primary origin indicators, the diamond-shaped white paper label bearing in red and green ink the word mark "Tabasco" and appellant's name and address, the green foil neck label on which the word mark is diagonally printed in black, and the name "McIlhenny" on the cap. The controlling case law is that background for other trademarks is registrable on the Principal Register only when it is either inherently distinctive or shown by satisfactory proof to have acquired a secondary meaning. In re Hillerich & Bradsby Co., 204 F.2d 287, 40 CCPA 990; In re Swift & Co., 223 F.2d 950, 42 CCPA 1048; In re E. J. Brach & Sons, 256 F.2d 325, 45 CCPA 998. Neither of these requirements has been met in this case.