47 CCPA

**Application of HEHR MANUFACTURING COMPANY.**

**Patent Appeal No. 6563.**

United States Court of Customs and Patent Appeals.

July 6, 1960.

---

Moore & Hall, Washington, D. C., Reed C. Lawlor, Los Angeles, Cal. (Elliott I. Pollock, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C., for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH and MARTIN, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board of the United States Patent Office affirming the examiner's refusal to register on the principal register appellant's trademark consisting of "a square red label, upon which applicant's secondary trademarks are usually placed," for use on windows and ventilators for automobile trailers. Refusal was on the ground that appellant had not satisfactorily shown that the mark identified or distinguished its goods.

The facts do not appear to be seriously disputed. The board's interpretation thereof is reflected in the following excerpt:

"The record shows that applicant marks its products by sticking gummed labels thereon. These labels are in the form of squares and are colored red. On the various square red labels appears a large lower case "h", surrounded by 'A Hehr Hallmark Mobile Home Window'; or the name 'Hehr' displayed on a diagonal black panel surrounded by 'Mobile Home Windows' or by 'No Draft Vents * * * Trailer Windows'; or a large letter 'X' surrounded by 'A New Hehr Mobile Home Window'.

"These composites are registered.

"The record also shows that the three composites have been rather extensively advertised with the phrase 'Look For These Emblems' featured prominently. Some of the advertisements have directed attention to 'these red stickers', but the 'red stickers' reproduced show the entire composites."

The applicant goes into greater detail in its efforts to show that the red square label identifies its goods as reflected by the following excerpt from its brief:

"Petitioner adopted the Red Square labels here involved in 1950, and has continuously employed the same since that time. Although secondary marks always appear on the Red Square when applied to goods, it was early recognized that the Red Square per se made a marked impression in the trade and on the purchasing and viewing public; and Petitioner accordingly instructed its advertising agent to emphasize the Red Square as identifying the goods involved. As a result, a series of advertisements were prepared commencing in about March 1954, and

continuing to date, which repeatedly emphasized the shape and color of the Red Square per se as a trademark identifying Petitioner's goods. Over the years, some $112,000 has been spent in advertisements, of which amount some $30,000 is directly attributable to having the Red Square, in advertisements, printed in the color red whenever possible. The advertisements further contain slogans stressing the Red Square as an identifying trademark; and attention is specifically invited to Exhibits M, P, T, U, V, W, A–2, A–3, B–5 and B–6, all of which contain phrases such as 'Always look for the Red Sticker,' 'Look for these red stickers, they are your guide to quality,' 'These *red* stickers are your assurance of quality,' and the like. These and other exhibits have been submitted to the Court with a stipulation filed August 21, 1959, and by Patent Office letter dated September 17, 1959.

"Certain of the printed advertisements, e. g. see Exhibits V, W and X, further illustrate Petitioner's windows with a red sticker thereon, but without any secondary mark or composite mark evident in said stickers. Moreover, when color printing was not available, black-and-white advertisements included descriptive information stressing the fact that 'red stickers' were employed to identify Petitioner's goods (see, for example, Exhibits A–2, A–3 and B–5)."

In addition, the record contains the result of a survey conducted among trailer manufacturers. Although we agree with some of the criticism which the board directs at the survey it seems to us that, on the whole, it is adequate to show that a majority of those interviewed associated the instant label with appellant's products.

■ Whether a trademark is eligible for registration depends on many factors. With respect to the degree of proof required to establish a secondary meaning sufficient to identify an applicant's goods, the statute is silent except for the suggestion that substantially exclusive use for a period of five years immediately preceding filing of an application may be considered prima facie evidence. Congress has chosen to leave the exact degree of proof necessary to qualify a mark for registration to the judgment of the Patent Office and the courts.

■ On several occasions this court has considered whether a label or design which constitutes a background for, or is otherwise associated with a name mark, has separate trademark significance. In re Burgess Battery Co., 112 F.2d 820, 27 CCPA 1297; In re Burgess Battery Co., 142 F.2d 466, 31 CCPA 1039; In re Swift & Co., 223 F.2d 950, 42 CCPA 1048; In re Hillerich & Bradsby Co., 204 F.2d 287, 40 CCPA 990; and In re E. J. Brach & Sons, 256 F.2d 325, 45 CCPA 998. The general principle derived from those decisions is that unless a design is inherently distinctive it is registrable only if sufficient evidence is presented to show that it has acquired secondary meaning as a trademark; and that the exact kind and amount of evidence necessary to establish such meaning necessarily depends on the circumstances of the particular case.

It goes without saying that we respect the views of the board, but in our opinion the record as a whole supports the applicant's position that the instant label sufficiently distinguishes and identifies its goods as to justify registration. It therefore becomes necessary to reverse the decision appealed from.

Reversed.