48 CCPA

**WEISS NOODLE COMPANY, Appellant,**

v.

**GOLDEN CRACKNEL AND SPECIAL-TY COMPANY, Appellee.**

**Patent Appeal No. 6685.**

United States Court of Customs and Patent Appeals.

June 2, 1961.

Herbert J. Jacobi, Washington, D. C., for appellant.

Thomas L. Poindexter, Detroit, Mich., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPAT-RICK.*

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of

Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

RICH, Judge.

This is a cancellation proceeding. The Trademark Trial and Appeal Board granted the petition of Golden Cracknel and Specialty Co. to cancel registration No. 627,468 of May 22, 1956, granted to Weiss Noodle Co. on application Ser. No. 644,651, published March 6, 1956, in Class 46.

The mark registered was "Ha-Lush-Ka" (the quotes being part of the mark) for "Egg Noodles; and Egg Noodle Products—Namely, Macaroni, Spaghetti, and Egg Noodle Novelties in Different Shapes, All Having the Required Egg Contest." The registration shows on its face that it was granted under section 2(f) and the asserted date of first use is Aug. 18, 1952.

The registration was cancelled on the ground that "Ha-Lush-Ka" is nothing more than a hyphenated, phonetically spelled version of the Hungarian word "haluska" which means, inter alia, noodles and as such is the "common descriptive name for egg noodles." Significant statements in the board's opinions (one on a request for reconsideration) are as follows:

> "Petitioner's record shows that it is a competitor of respondent in the sale of noodles; and that it has, since the end of 1957, used 'Ha-Lush-Ka' to identify a type of noodle of its manufacture. 'Haluska' is listed in a Hungarian-English Dictionary as the equivalent of 'Galuska', which term is defined as 'noodles, dumplings'. A Hungarian born member of petitioner's firm testified that 'Haluska' is pronounced as 'Halushka' in the Hungarian language.

> \*   \*   \*   \*   \*   \*

> "Respondent's exhibits comprise five packages of the various types of noodles which it sells \* \* \* one 'Ha-Lush-Ka'. The back portion of the 'Ha-Lush-Ka' bag bears a Hungarian-Slavic recipe for 'Kaposzta Hal-Lush-Ka or (Galuska)'. 'Kaposzta' is a Hungarian word meaning cabbage and the recipe is for making a cabbage noodle dish.

> \*   \*   \*   \*   \*   \*

> "It is clear from the record in this case that 'Galuska' means noodles; 'Haluska' is the equivalent of 'Galuska'; 'Halushka' is the phonetic equivalent of 'Haluska'; and that respondent, as well as the petitioner and others in the trade, have used 'Ha-Lush-Ka' to identify a particular type of noodle."

And on petition for reconsideration:

> " \*   \*   \* attention is directed to 'A Dictionary of the Hungarian and English Language' by Arthur B. Yoland and 'English-Hungarian Dictionary' by Franz De Paula Bizonfy, copies of which are available for inspection in the Patent Office, wherein 'Haluska' is respectively defined as 'a kind of paste' and 'an edible paste', and wherein the former, on page IX of the introduction, it is indicated that in the Hungarian language, the letter 'S' is pronounced like the (sh) in shut, wish, and the like."

■ As to the dictionary definitions, appellant, while not disputing their existence, argues that there is "no such word as 'Ha-Lush-Ka' in the Hungarian language." While the statement is true in the narrowest possible sense, the argument is without substance. The Hungarian word "haluska" is pronounced as though it were spelled "Halushka" (to an English-speaking person) and merely to hyphenate the phonetic version does not destroy its identity. Furthermore, Mr. Weiss, managing partner of the appellant company, owner of the registration, testified:

> "XQ249. How old were you when you came to the United States? A. I was ten years old.

> "XQ250. Had you ever heard the word, Hungarian word spelled h-a-l-u-s-k-a, before you came to the United States at any time? A. I had heard that word, yes."

On review of the record, we are compelled to regard the subject matter of the registration as the name, in Hungarian, of at least some of the noodle products enumerated in the registration. As such it falls within the statutory Prohibition of section 2(e) which proscribes the registration of merely descriptive words. The name of a thing is the ultimate in descriptiveness. In re Cooper, 254 F.2d 611, 45 CCPA 923. It is immaterial that the name is in a foreign language. In re Northern Paper Mills, 64 F.2d 998, 20 CCPA 1109.

Appellant appears to rely principally on the argument that even if "Ha-Lush-Ka" ever was descriptive, it has become distinctive of appellant's product, has acquired a "secondary meaning" as an indication of the origin of appellant's product, which justified if, indeed it did not compel, the granting of the registration in the first place and now justifies continuance of the registration.

While it is true that the registration was granted after objection by the examiner that "Ha-Lush-Ka" is descriptive and "not capable of distinguishing applicant's goods in commerce from similar goods of others," which rejection was retreated from after a showing by appellant, the question here is whether the examiner erred in not adhering to his rejection. If he committed error, it is no more binding in this cancellation proceeding than is the issuance of the registration in any other. Appellant argues here, as it argued on the petition for reconsideration, that the board overlooked the fact that registration was granted under section 2(f) because it had become distinctive and complained that the board cited no authority for cancelling a registration issued under section 2(f). Before us appellant cites the case of Bavarian Brewing Co., Inc. v. G. Heileman Brewing Co., 107 U.S. P.Q. 245 (Com'r.), apparently for the proposition that upon a showing of distinctiveness a mark *must* be considered to be registrable, or at least for the proposition that such a showing imposes on petitioner here a very heavy burden which has not been discharged.

The board's answer to this argument was that "Ha-Lush-Ka," as the common descriptive name for egg noodles, *"could not* have acquired a secondary meaning as an indication of origin of respondent's noodles." [Emphasis ours.]

We have recently had occasion to consider several situations in which various marks had in fact come to indicate origin or had acquired what we may call "de facto secondary meanings," due to temporary use by no one other than the applicant, for example, yet which cannot be registered. Compare J. Kohnstam, Ltd. v. Louis Marx & Co. et al., 280 F.2d 437, 47 CCPA 1080; In re Deister Concentrator Co., 289 F.2d 496, 48 CCPA ——; In re Shakespeare Co., 289 F.2d 506, 48 CCPA ——; DeWalt, Inc. v. Magna Power Tool Corp., 289 F.2d 656, 48 CCPA ——. In the instant case registration of the Hungarian name for noodles, "haluska" or its phonetic equivalent in English, whether or not hyphenated, would be contrary to law for no one can be granted the exclusive use of the name of an article, either in our native tongue or its equivalent in any foreign language. Holland v. C. & A. Import Co., D.C.S.D.N.Y., 8 F.Supp. 259; Dadirrian v. Yacubian et al., 1 Cir., 98 F. 872. See also Bart Schwartz International Textiles, Ltd. v. Federal Trade Commission, 289 F.2d 665, 48 CCPA ——. The reason was succinctly stated by the board at the conclusion of its initial opinion, where it said:

"* * * respondent's registration of this term with the presumptions following therefrom is inconsistent with the right of petitioner and others in the trade to use 'Haluska' or 'Ha-Lush-Ka' as such [i. e. the descriptive name for egg noodles]."

The examiner erred in accepting the showing of "distinctiveness" in granting the registration because no matter what the market situation may have been as to indication of origin or secondary meaning, the common descriptive

name of the product cannot become a trademark owned exclusively by one vendor. The registration must therefore be cancelled.

The arguments predicated on the extent of appellant's sales of its product under the "Ha-Lush-Ka" mark and the advertising expenditures related thereto cannot be given weight. While it is always distressing to contemplate a situation in which money has been invested in a promotion in the mistaken belief that trademark rights of value are being created, merchants act at their peril in attempting, by advertising, to convert common descriptive names, which belong to the public, to their own exclusive use. Even though they succeed in the creation of de facto secondary meaning, due to lack of competition or other happenstance, the law respecting registration will not give it any effect. When the board said "Ha-Lush-Ka" *could not* acquire a secondary meaning it meant that no secondary meaning *of legal significance* could be acquired. It would perhaps be more realistic to say that the descriptive name of a product is unregistrable regardless of acquired secondary meaning. Contrary to the statement appellant quotes from the headnote of the Bavarian Brewing case,

section 2(f) is not a "Congressional mandate to register all marks which have become distinctive," assuming we can conceive of the descriptive name of a thing as a "mark."

There is considerable emphasis in appellant's brief on the fact that appellant was the first to develop and market in this country a specific egg noodle product 1″ wide, 0.030″ thick, and 5″ long, this being the product it identified as "Ha-Lush-Ka." There are also overtones of unfair competition in the brief which suggests that the petitioner for cancellation copied the product as well as the name and seeks cancellation as a means of harassing appellant and forestalling suit for infringement. We are not concerned with these matters but only with the propriety of the registration which, it will be noted, is not specific to any particular kind of noodle. Indeed, it is so broad as to include, in the category of noodles, macaroni and spaghetti.[1] In deciding whether the mark registered is in fact the name of the product, we look to the description of the products in the registration, not to the registrant's market practices.

The decision of the board is affirmed.

Affirmed.

---

1. To add our bit to the record, Muret-Sanders German-English dictionary (1910) defines the German word "Nudel" as "strips *pl.* of dough or paste" and "italienische nudel" as "maccaroni, (Fadennudeln) vermicelli."