# United States Court of Appeals for the Federal Circuit

06-1133
(Serial No. 76/289,621)

IN RE PENNINGTON SEED, INC.
(mark formerly owned by KRB Seed Company, LLC)

Howard A. MacCord, Jr., MacCord Mason PLLC, of Greensboro, North Carolina, argued for appellant.

Stephen Walsh, Associate Solicitor, United States Patent and Trademark Office, of Arlington, Virginia, argued for appellee. With him on the brief were John M. Whealan, Solicitor, and Nancy C. Slutter, Associate Solicitor. Of counsel was Heather F. Auyang, Associate Solicitor.

Appealed from: United States Patent and Trademark Office
Trademark Trial and Appeal Board

# United States Court of Appeals for the Federal Circuit

06-1133
(Serial No. 76/289,621)

IN RE PENNINGTON SEED, INC.
(mark formerly owned by KRB Seed Company, LLC)

_____

DECIDED:  October 19, 2006

_____

Before MICHEL, <u>Chief Judge</u>, LOURIE, <u>Circuit Judge</u>, and ELLIS,[*] <u>District Judge</u>.

LOURIE, <u>Circuit Judge</u>.

## DECISION

Pennington Seed, Inc. ("Pennington") appeals from the decision of the United States Patent and Trademark Office ("PTO") Trademark Trial and Appeal Board (the "Board") refusing registration of the term "Rebel" as a trademark for a variety of grass seed.  <u>In re KRB Seed Co.</u>, 76 U.S.P.Q. 2d 1156 (T.T.A.B. 2005).  Because the Board correctly determined that the applied-for mark is the generic designation for that variety of grass seed and hence is not entitled to trademark registration, we affirm.

---

[*]    Honorable T.S. Ellis, III, District Judge, United States District Court for the Eastern District of Virginia, sitting by designation.

BACKGROUND

On July 25, 2001, KRB Seed Company, LLC (hereinafter referred to as "Applicant") filed an application to register the word "Rebel" as a trademark for grass seed. Applicant had previously designated the term "Rebel" as the varietal (or cultivar) name for a grass seed that was the subject of a plant variety protection ("PVP") certificate, issued on May 14, 1981. The trademark examining attorney refused registration of the applied-for mark under 15 U.S.C. §§ 1051, 1052, and 1127 on the ground that it was a varietal name for a type of grass seed, and thus that the name was the seed's generic designation. Applicant appealed the examiner's decision to the Board and, upon request by the examiner, the Board remanded the appeal to the examiner to address Applicant's claim of acquired distinctiveness under 15 U.S.C. § 1052(f). Upon remand, the examiner refused the registration under 15 U.S.C. § 1052(f) and made final his refusal to register the term "Rebel" as a trademark for grass seed.

Applicant appealed to the Board, and the Board affirmed the examiner's decision. The Board first found that the evidence conclusively established that the term "Rebel" is a varietal name for a type of grass seed. Thus, the Board observed that the only issue before it was whether the PTO's long-standing precedent and policy of treating varietal names as generic was still valid. After reviewing prior case law, the Board concluded that the PTO's policy was still valid. In reaching its conclusion, the Board rejected Applicant's argument that the PTO had incorrectly applied Dixie Rose Nursery v. Coe, 131 F.2d 446 (D.C. Cir. 1942), in which the District of Columbia Circuit determined that the term "Texas Centennial" could not be registered as a trademark because it was the

varietal name for a particular rose. The Board observed that <u>Dixie Rose</u> did not set forth a special test from which to judge genericness, but simply established that varietal names were not subject to trademark protection.

The Board also found support for its decision in the Trademark Manual of Examining Procedure ("TMEP"), which instructs examiners to refuse registration of varietal names because such names do not function as source indicators. Additional support was provided by the International Convention for the Protection of New Varieties of Plants ("UPOV"), which provides, <u>inter alia</u>, that a name for a new plant variety must be designated and that that designation will be its generic name, and by Section 52 of the Plant Variety Protection Act ("PVPA"), 7 U.S.C. § 2422, which requires that an application for a PVP certificate include the name of the plant variety.

The Board further determined that Applicant's reliance on <u>TrafFix Devices, Inc. v. Marketing Displays, Inc.</u>, 532 U.S. 23 (2001), for the holding that a claimed feature of an expired patent could nevertheless function as a trademark was misplaced. According to the Board, an applicant must provide a name for a variety of plant when applying for a PVP certificate, and that requirement is a clear indication "that the name of the varietal is in the nature of a generic term." <u>In re KRB Seed</u>, 76 U.S.P.Q. 2d at 1159. In light of the case law, the UPOV, the PVPA, and the TMEP, the Board declined to disturb its policy of treating varietal names as generic designations.

Applicant timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

DISCUSSION

We apply a limited standard of review to Board decisions, reviewing legal determinations <u>de novo</u> and factual findings for substantial evidence. <u>In re Pacer Tech.</u>, 338 F.3d 1348, 1349 (Fed. Cir. 2003). "Substantial evidence requires the reviewing court to ask whether a reasonable person might find that the evidentiary record supports the agency's conclusion." <u>On-Line Careline, Inc. v. Am. Online, Inc.</u>, 229 F.3d 1080, 1085 (Fed. Cir. 2000). Whether a term is a generic, common descriptive name for a good is a question of fact. <u>In re Northland Aluminum Prods.</u>, 777 F.2d 1556, 1559 (Fed. Cir. 1985).

On appeal, Pennington argues that the Board erred in applying the rule of <u>Dixie Rose</u> that varietal names are generic. According to Pennington, a blanket refusal to register a varietal name fails to consider this court's test for genericness, <u>viz.</u>, the primary significance of the mark to the purchasing public. Pennington contends that under the appropriate test, the evidence submitted by the examiner, which mainly consisted of government documents and websites, was insufficient to establish that the applied-for mark was generic. Pennington also asserts that a per se rule prohibiting trademark protection when another form of intellectual property protection is also procured is no longer appropriate in light of the Supreme Court's decision in <u>TrafFix</u>. Pennington further argues that even though the language in the UPOV provides that a plant's varietal name will be its generic designation, the UPOV is not applicable here because Applicant's PVP certificate issued before the UPOV's effective date.

Finally, Pennington argues that the generic treatment of varietal names is inconsistent with public policy; Congress made clear in enacting 15 U.S.C. § 1064 in response to the Ninth Circuit's decision in <u>Anti-Monopoly v. General Mills Fun Group,</u>

<u>Inc.</u>, 684 F.2d 1310 (9th Cir. 1982), that a name may be used to indicate both a product and its source. According to Pennington, this court adopted such reasoning in its decision in <u>In re Montrachet</u>, 878 F.2d 375 (Fed. Cir. 1989), and the Board failed to follow that precedent.

The Director of the PTO responds that for over sixty years the courts and the PTO have clearly held that varietal names of plants are not registrable. According to the Director, application of this rule dates back to the <u>Dixie Rose</u> decision. The Director contends that since that decision, the PTO's practice of not registering varietal names because they are generic designations for plants has become an established principle, adopted in the UPOV and accommodated by the PVPA. According to the Director, this recognized principle is consistent with public policy because when a new plant variety is developed it must be given a name, and that varietal name may be the only name that purchasers use to designate that particular variety of plant. The Director further responds that the Supreme Court's decision in <u>TrafFix</u> does not require that varietal names must be registerable as trademarks. Because it is undisputed that the term "Rebel" is the designated name for a variety of grass and is not a brand name, the term was generic from its first use and thus is not entitled to trademark registration.

We agree with the Director that the Board correctly decided that the varietal name "Rebel" is generic and hence is not entitled to trademark registration. Instructive to our holding is the decision in <u>Dixie Rose</u>. Although that decision of the District of Columbia Circuit is not binding on our court, we find its reasoning persuasive. In <u>Dixie Rose</u>, an applicant had patented a new variety of rose and had sought to register the term "Texas Centennial" as a trademark for the rose. 131 F.2d at 446. The

Commissioner of Patents refused registration of the proposed term on the ground that it was the name of the variety of the rose. The Commissioner reasoned that the term "Texas Centennial" was "one of a hundred varieties of hybrid tea rose listed in applicant's catalog of record, each bearing its own distinctive name. . . . Each is the name of a particular type, style, or variety of rose, and would be likely to convey no other meaning to purchasers." Ex parte Dixie Rose Nursery, 45 U.S.P.Q. 673 (Comm'r Pats. 1940). The district court refused to authorize the Commissioner to register the proposed term. On appeal, the District of Columbia Circuit affirmed, reasoning that the rose variety was "known throughout the trade, and listed in appellant's catalog by this name. Purchasers call for it, and for no other variety, by this name." Dixie Rose, 131 F.2d at 446. Thus, the court determined that the PTO and district court "might properly conclude that the words 'Texas Centennial,' though originally arbitrary, have come to describe to the public a rose of a particular sort, not a rose from a particular nursery." Id. at 447. The court further reasoned that words which are descriptive cannot be registered, even when an "applicant and his licensees are, for the moment, the only persons who produce the thing described." Id.

Subsequent Board decisions have consistently followed and applied the holding of Dixie Rose, refusing trademark registration for varietal names of plants on the ground that such names designate a particular variety of plant, rather than indicate the source of the product. See Cohn Bodger & Sons Co., 122 U.S.P.Q. 345 (T.T.A.B. 1959) (refusing registration of the name "Blue Lustre" as a trademark for hybrid petunia seeds); In re Farmer Seed & Nursery Co., 137 U.S.P.Q. 231 (T.T.A.B. 1963) (refusing registration of the name "Chief Bemidji" as a trademark for a strawberry plant). In In re

<u>Hilltop Orchards & Nurseries, Inc.</u>, 206 U.S.P.Q. 1034, 1036 (T.T.A.B. 1979), in which the Board affirmed the examiner's refusal to register the name "Commander York" as a trademark for apple trees, the Board reasoned that the purchaser "has to have some common descriptive name he can use to indicate that he wants one variety of apple tree, rose, or whatever, as opposed to another, and it is the varietal name of the strain which naturally and commonly serves this purpose."

Those cases are instructive to our decision in this case. It is well-established that an applicant cannot acquire trademark protection for the generic name of a product. See <u>Goodyear's Rubber Mfg. Co. v. Goodyear Rubber Co.</u>, 128 U.S. 598, 602 (1888) ("names which are thus descriptive of a class of goods cannot be exclusively appropriated by any one"); <u>Weiss Noodle Co. v. Golden Cracknel & Specialty Co.</u>, 290 F.2d 845, 847 (C.C.P.A. 1961) ("no one can be granted the exclusive use of the name of an article"); <u>BellSouth Corp. v. DataNational Corp.</u>, 60 F.3d 1565, 1569 (Fed. Cir. 1995) (the generic name of a product "cannot inform the public that the product has a particular source"). Similarly, in this case, the examiner determined that the evidence demonstrated that the term "Rebel" was the varietal name for the grass seed and was the seed's generic designation.

We see no reason to disturb the examiner's finding, as substantial evidence in the record supports his determination that "Rebel" is a varietal name and is thus generic. The evidence consists of excerpts of articles from a variety of sources, including one from the Germplasm Resources Information Network web server, wherein "Rebel" is listed as a cultivar name for tall fescue grass seed, an excerpt from the database maintained by UPOV listing "Rebel" as the denomination of a tall fescue

variety, and an excerpt from a listing on plant varieties kept by the Seed Regulatory and Testing Branch of the United Statues Department of Agriculture. The evidence thus demonstrates that the term "Rebel" is the name of a variety of grass seed and as such is the variety's generic designation. There is in fact no evidence in the record to suggest that the asserted mark functions as a source indicator, rather than as a name for a particular grass seed. Thus, substantial evidence supports the Board's finding that the term "Rebel" is the name of a variety of grass seed and is its generic designation.

The reasoning underlying the PTO's decision to refuse registration of a varietal name is not, as Pennington argues, inconsistent with the public interest. When an applicant seeks protection of its grass seed, the applicant is required to name its developed variety. Applicant here decided to name its variety of grass seed "Rebel" and that name was disclosed in the PVP certificate, designating to the public the name of the variety of grass seed. Just as in Dixie Rose, that variety of grass seed became known throughout the trade by the name "Rebel" and is listed in applicant's catalog by that name. When a purchaser asks for that particular type of grass seed, he has no other name to use but its designated name. The purchasing public only has the term "Rebel" to refer to this particular product. As we stated in In re Merrill Lynch, Pierce, Fenner, & Smith, Inc., 828 F.2d 1567, 1569 (Fed. Cir. 1987):

> Generic terms, by definition incapable of indicating source, are the antithesis of trademarks, and can never attain trademark status. The reason is plain: To allow trademark protection for generic terms, i.e., names which describe the genus of goods being sold, even when these have become identified with a first user, would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are.

We do not of course hold that an applicant is precluded from acquiring trademark protection for a particular variety of grass seed. If an applicant wishes to establish trademark protection for its variety of grass seed, it can do so by associating a particular brand name with its grass seed. However, having designated the term "Rebel" as the varietal name for grass seed and having failed to associate any additional word with the Rebel grass seed that would indicate the seed's source, Applicant here is prohibited from acquiring trademark protection for the generic and only name of that variety of grass seed. This situation may be contrasted with pharmaceutical products where a generic name is designated for a new pharmaceutical product and its manufacturer associates it with a brand name. For example, ibuprofen is the generic term designated for a particular nonsteroidal anti-inflammatory drug and ADVIL is a brand name indicating a source of the drug. Trademark protection does not inure to the generic name there and it does not do so here.

As our predecessor court has aptly stated:

> While it is always distressing to contemplate a situation in which money has been invested in a promotion in the mistaken belief that trademark rights of value are being created, merchants act at their peril in attempting, by advertising, to convert common descriptive names, which belong to the public, to their own exclusive use. Even though they succeed in the creation of de facto secondary meaning, due to lack of competition or other happenstance, the law respecting registration will not give it any effect.

Weiss Noodle, 290 F.2d at 845. Thus, the Board correctly decided that the term "Rebel" cannot be registered for grass seed because those in the trade "need to call it by the name that it is known or otherwise consumers will not know what they are buying." In re KRB Seed, 76 U.S.P.Q. 2d at 1160.

That determination is consistent with the language in the UPOV, the PVPA, and the TMEP, which provide that plant variety names are unregistrable as trademarks. Chapter VI Article 20 of UPOV, as revised in 1991, provides that:

(1) (a) The variety shall be designated by a denomination which will be its generic designation.
(b) Each Contracting Party shall ensure that, subject to paragraph (4), no rights in the designation registered as the denomination of the variety shall hamper the free use of the denomination in connection with the variety, even after the expiration of the breeder's right.
***
(8) When a variety is offered for sale or marketed, it shall be permitted to associate a trademark, trade name or other similar indication with a registered variety denomination. If such an indication is so associated, the denomination must nevertheless be easily recognizable.

The United States is a party to the UPOV. Although Pennington argues that UPOV does not apply here because the use of the designation "Rebel" predated the United States' adherence to UPOV, we find this argument unpersuasive. The PTO's policy of refusing registration of varietal names dates back to the Dixie Rose case, well before the UPOV treaty. While the requirements of the UPOV do not control this case, they underlie and are consistent with the conclusion that a varietal name is generic and hence support the PTO's refusal to register the term "Rebel" as a trademark. Further, the PVPA, which requires an application for a PVP certificate to include the name of the plant variety, is also consistent with our decision. See 7 U.S.C. § 2422. In addition, section 1202.12 of the TMEP provides that "varietal or cultivar names are designations given to cultivated varieties or subspecies of live plants or agricultural seeds. They amount to the generic name of the plant or seed by which such variety is known to the public." While the TMEP is not established law, but only provides instructions to examiners, it does represent the PTO's established policy on varietal names that is

entitled to our respect.  We see no reason to differ with it.  See W. Fla. Seafood, Inc. v. Jet Rests., Inc., 21 F.3d, 1122, 1127 n.8 (Fed. Cir. 1994) ("While the TMEP does not have the force and effect of law, it sets forth the guidelines and procedures followed by the examining attorneys at the PTO.").

Pennington contends that an amendment to the Lanham Act, embodied in 15 U.S.C. § 1064 provides support for its position that a mark cannot be deemed generic solely because the mark has also been used as a name for a product.  That amendment does not aid Pennington.  Section 1064 of Title 15 is entitled "Cancellation of Registration" and provides generally for the cancellation of a registered mark if such a mark becomes generic.  Section 1064(3) provides specifically that a "registered mark shall not be deemed to be the generic name of goods or services solely because such mark is also used as a name of or to identify a unique product or service."  That section, however, pertains to cancellation of registered marks and does not apply here because the term "Rebel" is not a registered mark.  Moreover the amendment was enacted in response to the decision in Anti-Monopoly v. General Mills Fun Group, Inc., 684 F.2d 1310 (9th Cir. 1982), wherein the term "Monopoly" was used to identify both the source of a product and to describe the product itself, and hence was held to be generic. The statute reversed that holding.  Here, the term "Rebel" does not function as a source indicator, but rather indicates, and always has indicated, a variety of grass seed.

Similarly, our decision in In re Montrachet does not provide support for Pennington.  In that case, the issue was "whether MONTRACHET has lost its original trademark significance; that is whether MONTRACHET is now the common descriptive or generic name for applicant's cheese."  In re Montrachet, 878 F.2d at 376.  In

determining that the term "Montrachet" for goat cheese was not generic, the court reasoned "[t]hat a particular source makes a goat cheese with recognizable characteristics does not convert the designation of source to a common or generic name," and cited 15 U.S.C. § 1064(c). Id. at 376-77. There the inquiry was whether a trademark as used on a single product became generic. Here, the term "Rebel," as a varietal name, was generic ab initio. Thus, 15 U.S.C. § 1064 and In re Montrachet are not relevant to the disposition of this case.

Finally, we reject Pennington's argument that the Supreme Court's decision in TrafFix supports its appeal. Pennington argues that TrafFix held that acquiring patent protection on a product does not prohibit an applicant from also acquiring trademark protection on that product, and likewise that Applicant should not be prohibited from acquiring trademark protection on its plant merely because that plant has plant variety protection. In TrafFix, the "principal question" was "the effect of an expired patent on a claim of trade dress infringement." 522 U.S. at 29. The Court then stated that a "utility patent is strong evidence that the features therein claimed are functional." Id. That case was thus concerned with a very different issue: whether a claimed feature of an expired patent could acquire trade dress protection, and the Court held that there was a rebuttable presumption that it could not. Here, it is irrelevant to our decision that Applicant's plant protection has expired, and we are not concerned with whether a functional aspect of a plant can acquire trade dress protection. As the Board stated, the designation of the term "Rebel" in the PVP certificate is not an arbitrary aspect of a PVP certificate, but is a "necessary element, showing that the name of the varietal is in the nature of a generic term." In re KRB Seed, 76 U.S.P.Q. 2d at 1159. Thus, the TrafFix

decision does not provide a relevant analogy to this case, which concerns whether a varietal name is generic.

## CONCLUSION

Because we hold as a matter of law that plant varietal names are generic and substantial evidence supports the Board's finding that "Rebel" is a varietal name, the decision of the Board is affirmed.

## <u>AFFIRMED</u>