THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
March 24, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Cordua Restaurants LP*

_____

Serial No. 85214191

_____

J. M. (Mark) Gilbreth of Gilbreth & Associates, P.C. for Cordua Restaurants LP.

Asmat Khan, Trademark Examining Attorney, Law Office 114 (K. Margaret Le Managing Attorney).

_____

Before Rogers, Chief Administrative Trademark Judge, and Cataldo and Gorowitz, Administrative Trademark Judges.

Opinion by Gorowitz, Administrative Trademark Judge:

Applicant is appealing the final refusal of its application to register CHURRASCOS in stylized form, as set forth below, as a mark for "bar and restaurant services; catering."[1]

---

[1] Application Serial No. 85214191, filed January 10, 2011, pursuant to Section 1(a) of the Trademark Act, alleging first use and first use in commerce on August 8, 1998.

Registration on the Principal Register has been refused on the ground that the applied-for matter is generic.

The application includes a claim of ownership of Registration No. 3439321 for the mark CHURRASCOS in standard character form for "restaurant and bar services; catering."

**Background**

Registration was initially refused pursuant to Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), on the ground that the applied-for matter is merely descriptive of applicant's services. (Office action dated April 7, 2011). Applicant responded, on August 1, 2011, and submitted a claim of acquired distinctiveness based on its ownership of Registration No. 3439321. Thereafter, in an Office action dated November 8, 2011, the examining attorney indicated that applicant's evidence of acquired distinctiveness (ownership of Registration No. 3439321) had been considered and rejected; and registration was refused pursuant to Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), on the ground that the applied-for matter is generic.

On May 8, 2012, applicant filed additional evidence to establish acquired distinctiveness, which consisted of the Declaration of Pat McCarley, applicant's Vice President of Development. Mr. McCarley declared that from 2007–2011, applicant's

restaurants grossed an average annual income in excess of $8,000,000 and applicant's annual marketing, advertising and promotional expenditures exceeded $79,000. No other information or documentation was provided about advertising, marketing or promotional activities. The exhibits to Mr. McCarley's declaration consisted of an article from the August 28, 2008 edition of Esquire Magazine entitled *The 20 Best Steaks in America*; and several tributes to applicant's Executive Chef, Michael Cordua, which mentioned "Churrascos" as one of the restaurants he owned.

On June 14, 2012, the examining attorney made final the refusal on the grounds that the applied-for matter is generic. In the alternative, the examining attorney maintained that the proposed mark is at least descriptive and rejected applicant's evidence of acquired distinctiveness as insufficient. Applicant requested reconsideration of the refusal, which was denied. This appeal followed.

The issues to be decided are: 1. whether the term CHURRASCOS is generic for restaurant services, which includes consideration of the impact of applicant's ownership of a prior registration for CHURRASCOS in standard characters and 2. whether the term, if not generic, is merely descriptive or has acquired distinctiveness.

The appeal has been fully briefed.[2]

---

[2] The Board notes that applicant's appeal brief was single-spaced. Trademark Rule 2.126 (b) 37 C.F.R. § 2.126 (b) requires all briefs submitted to be double-spaced.

3

**Discussion**

**Genericness Refusal**

The determination of whether a particular term is generic, and therefore cannot be a trademark or service mark, is a question of fact. *In re Hotels.com LP*, 573 F.3d 1300, 91 USPQ2d 1532, 1533 (Fed. Cir. 2009). When a proposed mark is refused registration as generic, the Office has the burden of proving genericness by "clear evidence" thereof. *Id. See also In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110, 1111 (Fed. Cir. 1987); and *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987).

The critical issue in determining whether a term is generic is "whether members of the relevant public primarily use or understand the term sought to be protected to refer to the genus of goods or services in question." *H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc.,* 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986). Making this determination "involves a two-step inquiry: First, what is the genus of goods or services at issue? Second, is the term sought to be registered … understood by the relevant public primarily to refer to that genus of goods or services?" *Ginn*, 228 USPQ at 530. Evidence of the public's understanding of a term may be obtained from any competent source, including dictionaries, trade journals, newspapers and other publications. *See In re Merrill Lynch*, 4 USPQ2d at 1143; and *In re Northland Aluminum Products, Inc.,* 777 F.2d 1556, 227 USPQ 961, 963 (Fed. Cir. 1985).

The genus of the services at issue is adequately defined by a portion of the recitation of services in the application, specifically "restaurant services." *Magic Wand Inc. v. RDB Inc.*, 940 F.2d 638, 19 USPQ2d 1551, 1552 (Fed. Cir. 1991) ("[A] proper genericness inquiry focuses on the description of services set forth in the [application or] certificate of registration"). Moreover, both the applicant and the examining attorney agree that "restaurant services" defines the relevant genus.[3] "Restaurant" is defined in Merriam-Webster's Online Dictionary, 11th edition, as "a business establishment where meals or refreshments may be purchased."[4] Similarly, we take judicial notice of the definitions of "churrasco" from English language dictionaries, which applicant included in its appeal brief.

"Churrasco" is defined as

(1) "meat cooked over an open fire; and a large piece of meat suitable for barbecuing" (*Dictionary.com Unabridged.* Random House, Inc., http://dictionary.reference.com/ browse/churrasco);

(2) "a South American dish of steak barbecued over a wood or charcoal fire." (Oxforddictionaries.com,

---

[3] If the term CHURRASCOS is held to be generic for restaurant services, and thereby refused registration, it will also be refused registration for applicant's bar and catering services. It is settled law that registration will be refused for a term that is generic of a category or class of products [or services] where some but not all of the goods [or services] identified fall within that category. *See In re Analog Devices Inc.,* 6 USPQ2d 1808, 1810 (TTAB 1988); affirmed unpublished at 10 USPQ2d 1879 (Fed. Cir. 1989).

[4] The examining attorney requested that we take judicial notice of the definition. The Board may take judicial notice of dictionary definitions. *Stewart-Warner Corp. v. U.S.,* 748 F.2d 663 (Fed. Cir. 1984) ("We take judicial notice of the common dictionary definition of 'bicycle' ….") *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.,* 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), including online dictionaries that exist in printed format or have regular fixed editions. *In re Red Bull GmbH,* 78 USPQ2d 1375, 1377 (TTAB 2006). Accordingly, we have taken judicial notice of this definition of "restaurant."

http://oxforddictionaries.com/definition/english/churrasco); and

(3) "beef broiled on a spit over an open fire or grilled under an oven flame." (Merriam-Webster.com, http://www.merriam-webster.com/dictionary/churrasco).

We note that each of these definitions identifies "churrasco" as a noun and the first and third definition above further identify the plural form of "churrasco" as "churrascos." Although these definitions refer to "churrasco(s)" as being meat or meat cooked in a particular way, the examining attorney has established by clear evidence that the general public (the consumers of restaurant services) understands that churrascos is generic for a type of restaurant, specifically a restaurant that serves "churrascos." The evidence consists of excerpts from LEXIS database searches conducted by the examining attorney. For example:

- There are restaurants of every taste and style in the city…I also love eating at the Brazilian **churrasco restaurant** Rodizio Grill where they bring your sizzling food to you on spits straight from the fire (similar to "Made in Brazil" that recently opened here in St. George)….
*Take Time to Explore Salt Lake City,* The Spectrum (St. George, Utah) (from LEXIS database);

- Sal & Carvao, a Brazilian **churrasco restaurant**, will open Tuesday at …
Phil Vettel, *Restaurant row emerging on Randolph Street*, Chicago Tribune, July 26, 2002 (from LEXIS database);

- Now that we sail for pleasure rather than necessity, the glory days are back, the world's largest cruise ship, Royal Caribbean's Allure of the Seas boasts 25 dining options, from a Brazilian **churrasco restaurant** to a doughnut shop…
Felicity Cloake, *Going Overboard at the Captain's Table,* New Statesman, April 30, 2012 (from LEXIS database);

- Find a **churrasco restaurant**. There are plenty around, left over from that craze nearly a decade ago – Fogo de Chao, Texas de Brazil and the like. And you know what? They're pretty good. Meat of all kinds – sausages, chicken…
*Ask the Food Snobs The foodies-gone-bad answer your questions*, The Dallas Morning News, September 27, 2007; (from LEXIS database);

-I felt like a king says Mark Robin, a video editor from New York, who splurged on dinner and drinks for six friends at one of the best **churrasco restaurants** in Rio de Janeiro.
Michelle Higgins and Jesse Drucker, *A world of bargains; In a summer of deals, even exotic locales are affordable*, Chicago Sun-Times, June 10, 2001, (from LEXIS database); and

- …everybody who goes to Rio on Vacation. And with Argentine and Colombian and Bolivian versions of the South American mixed grill packing in crowds at places such as Norah's and the Gaucho Grill, a Los Angeles **churrasco restaurant** seems inevitable,"
Jonathan Gold, *Counter Intelligence: Inside the Protein Palace*, Los Angeles Times January 19, 1995, (from LEXIS database).

Applicant's own evidence supports a finding that "churrascos" is generic for a type or preparation of "steak."[5] Exhibit A to the Declaration of Pat McCarley, Vice President of Development for applicant includes the following excerpts from an

---

[5] John Mariani, *The 20 Best Steaks in America*, Esquire Magazine, August 28, 2008 (www.esquire.com/features/steak/best-steaks-0908).

article that appeared in an online version of Esquire Magazine:

In naming America's best steaks, which are presented below by cut, I considered two main criteria:

- *Diversity of preparation. I probably could have filled half the list with rib eyes from California, but that's no fun. I wanted porterhouse, strip, Italian, Cajun, Japanese-style, chicken-fried, churrascos -- steak in all its forms (even cheesesteak). Once I settled on a dish that fell into one of these essential categories, I pretty much moved on.*

- *Quality of meat. You will notice that the city of New York appears on the list far more than any other. This is due to the simple fact that most prime beef in this country -- and prime only accounts for about 2 percent of beef overall -- goes to New York steakhouses and restaurants. I can't help it.*

**Churrascos, Houston**

**Churrascos**

*On the side: Yuca fries*

Michael Cordúa brought churrascos to Houston twenty years ago, and he still sets the bar for these juicy, charred slabs of center-cut tenderloin laced with spicy chimichurri and served with salty-sweet, fresh-from-the-fryer plantain chips. *2055 Westheimer Road; 713-527-8300; cordua.com*

Churrascos (juicy, charred slabs of center-cut tenderloin laced with spicy chimichurri) is the specialty of applicant's restaurants (Appeal Brief, unnumbered p. 5), which applicant contends means the mark CHURRASCOS is not generic. Applicant argues that "caselaw [sic] supports the proposition that applicant's mark CHURRASCOS for restaurant services is merely descriptive of the restaurant services, be it in English or a foreign language." Appeal Brief, unnumbered p. 3. The cases relied on are *In re France Croissant, Ltd.*, 1 USPQ2d 1238 (TTAB 1986) and *In re Le Sorbet*, Inc., 228 USPQ 27 (TTAB 1985). Both cases are distinguishable from this one because the issue presented for decision in both was "descriptiveness," and therefore it was on this ground that the refusals were affirmed. The Board never considered whether the applied-for matter would also be

8

ineligible for registration on the ground of "genericness." Certainly these cases cannot be used to support the position that the involved marks were *not* generic and *only* merely descriptive, for that question was not presented.

In addition, after issuance of the decisions on which applicant relies, several cases made clear that "a term which is the generic name of a particular category of goods is likewise generic for any services which are directed to or focused on that class of goods." *In re CyberFinancial.Net Inc.*, 65 USPQ2d 1789, 1791 (TTAB 2002) (BONDS.COM is generic for "providing information regarding financial products and services via a global computer network and providing electronic commerce services via a global computer network … with respect to taxable and tax exempt debt instruments" because the services encompass information about bonds). *See also Hotels.com*, 573 F.3d 1300, 91 USPQ2d at 1535 (HOTELS.COM is generic where hotels were the focus of and named a key aspect of the information and reservation services in the application); *In re Wm. B. Coleman Co.*, 93 USPQ2d 2019, 2027 n.2 (TTAB 2010).

Our decisions involving retail store services using marks that are the generic names of items sold at the stores are instructive. Generally, where the matter sought to be registered identifies goods that are a primary or central focus of the store or distributorship service, we have considered the term to be generic. *See, e.g.*, *In re Tires, Tires, Tires, Inc.*, 94 USPQ2d 1153, 1157 (TTAB 2009) (TIRES TIRES TIRES generic for retail tire store services); *In re Lens.com, Inc.*, 83 USPQ2d 1444 (TTAB 2007) (LENS generic for "retail store services featuring contact eyewear

products rendered via a global computer network"); *In re Eddie Z's Blinds & Drapery, Inc.*, 74 USPQ2d 1037 (TTAB 2005) (BLINDSANDDRAPERY.COM generic for retail store services featuring blinds, draperies, and other wall coverings, conducted via the Internet); *In re Candy Bouquet Int'l, Inc.*, 73 USPQ2d 1883 (TTAB 2004) (CANDY BOUQUET generic for "retail, mail, and computer order services in the field of gift packages of candy"); *In re A La Vieille Russie, Inc.*, 60 USPQ2d 1895 (TTAB 2001) (RUSSIANART generic for dealership services in the field of fine art, antiques, furniture, and jewelry); *In re Log Cabin Homes Ltd.*, 52 USPQ2d 1206 (TTAB 1999) (LOG CABIN HOMES generic for retail outlets selling kits for building log homes); *In re Bonni Keller Collections Ltd.*, 6 USPQ2d 1224 (TTAB 1987) (LA LINGERIE generic for retail stores specializing in the sale of lingerie); *In re Wickerware, Inc.*, 227 USPQ 970 (TTAB 1985) (WICKERWARE generic for mail order and distributorship services in the field of products made of wicker); *In re Half Price Books, Records, Magazines, Inc.*, 225 USPQ 219 (TTAB 1984) (HALF PRICE BOOKS RECORDS MAGAZINES generic for retail book and record store services).[6]

Here, applicant's menu, submitted as a specimen of use, lists "Churrasco Steak" as its first entrée, and describes it as the restaurant's "signature" dish. All four of its offered "Surf & Turf" items include a "Churrasco." The most significant

---

[6] Because, as explained next, "churrascos" are a primary focus of applicant's restaurant services, we need not rule in this case on the question whether the converse would be true—i.e., where the good is sold at the store or restaurant but is *not* a primary or central focus, would the generic name of the good also be generic for the retail store or restaurant services?

award applicant submitted as part of its section 2(f) showing was its listing in Esquire magazine's listing of "The 20 Best Steaks in America." The "Churrasco" steak is clearly one of the primary items applicant's CHURRASCOS restaurants serve. Moreover, the evidence shows that there is a class of restaurants that have churrascos as a central focus of their services, and that both competitors in the field and consumers use the term "Churrasco" to refer to this type of restaurant.

Applicant also contends that its mark is "CHURRASCOS," with an "s" and not "CHURRASCO," and that the examining attorney's evidence does not show use of "churrascos" with restaurant services. In effect, applicant's argument is that consumers would not understand the plural form of the word "churrasco" to have the same meaning as the singular form for restaurant services. Applicant's contention has no merit both as a general principle and based on the evidence of record. Generally, putting a generic word in plural form will not create a registrable mark because pluralizing does not change the meaning of the word in relation to the goods or services at issue. Thus, evidence that the word in singular form is generic typically will suffice to show that the plural also is generic. *See e.g.*, *Hotels.com*, 573 F.3d 1300, 91 USPQ2d at 1535 (dictionary and other evidence of meaning of "hotel" sufficed to show that the plural form "hotels" in HOTELS.COM was generic for the information and reservation services at issue). Here, the evidence establishes not only that the singular form is generic, but also that the plural form "churrascos" is generic for applicant's restaurant services. The plural form "churrascos" is used generically in the article, discussed supra, which

11

applicant submitted to establish that its steaks were rated one of the 20 best steaks in America. John Mariani, *The 20 Best Steaks in America*, Esquire Magazine, August 28, 2008 (www.esquire.com/features/steak/best-steaks-0908). Mr. Mariani, in the article, stated that he was looking for "diversity of preparation …porterhouse, strip, Italian, Cajun, Japanese-style, chicken-fried, **churrascos** – steak in all of its forms (even cheesesteak)." *Id.* (emphasis added). In his critique of applicant's services, Mr. Mariani stated "Michael Cordua brought churrascos to Houston …" *Id.* Based on the evidence that "churrascos" is the generic term for a type of cooked meat, we find that "churrascos" is a generic term for a restaurant featuring churrasco steaks.

Applicant argues that because "[i]n Spanish/Portuguese, 'churrasco' is the meat, 'churrascaria' is the restaurant," the proposed mark is not generic. Appeal Brief, unnumbered p. 5. While this statement may be semantically correct, the generic nature of "churrascaria" does not contravene a finding that "churrascos" is a generic term for applicant's restaurant services featuring churrascos. That one name is generic does not necessarily make another name less so because "*any te*rm that the relevant public understands to refer to the genus . . . is generic." *In re 1800Mattress.com IP LLC*, 586 F.3d 1359, 92 USPQ2d 1682, 1685 (Fed. Cir. 2009) (emphasis added).

Further, the display of Applicant's mark, consisting primarily of stylized letters, does not make the applied-for matter registrable, despite the genericness of the term CHURRASCOS, since it does not create a separate commercial impression

over and above that made by the generic term. *See In re Sadoru Group Ltd.,* 105 USPQ2d 1484 (TTAB 2012);[7] *In re Grande Cheese Co.,* 2 USPQ2d 1447 (TTAB 1986);[8] *Couriaire Express International, Inc.,* 222 USPQ 365 (TTAB 1984);[9] and *In re S. D. Fabrics, Inc.,* 223 USPQ 54 (TTAB 1984),[10] in which refusals of registration were affirmed because the stylization of the descriptive or generic word was not sufficient to create an inherently distinctive impression on purchasers separate and apart from the impression made by the word itself.

### Applicant's ownership of Reg. No. 3439321

Applicant's prior registration, Registration No. 3439321, is for the mark CHURRASCOS in standard character form. The services in the registration (bar and restaurant services; catering) are identical to the services in the application now before us. Applicant contends that because its registered mark is in standard characters, it "has the presumption of being a valid trademark, and as such cannot be generic." Appeal Brief, unnumbered p. 8. Applicant's argument is not persuasive. Trademark rights are not static, and eligibility for registration must be determined on the basis of the facts and evidence of record that exist at the time



[7]
[8]
[9]
[10]

registration is sought. *In re Chippendales USA, Inc.,* 622 F.3d 1346, 1354, 96 USPQ2d 1681, 1686 (Fed. Cir. 2010); *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 213 USPQ 9 (CCPA 1982); *In re Thunderbird Prods. Corp.*, 406 F.2d 1389, 160 USPQ 730 (CCPA 1969); *In re Sun Microsystems Inc.*, 59 USPQ2d 1084 (TTAB 2001); *In re Styleclick.com Inc.*, 58 USPQ2d 1523 (TTAB 2001); *In re Styleclick.com Inc.*, 57 USPQ2d 1445 (TTAB 2000).

Each case must be decided on its own facts. Neither the USPTO – specifically, the examining attorney who examined the application here at issue – nor the Board, is bound by the decision of the examining attorney who examined the application for the applicant's previously registered mark.. *See In re Omega SA,* 494 F.3d 1362, 83 USPQ2d 1541 (Fed. Cir. 2007) (upholding examining attorney's requirement for a more definite identification, notwithstanding applicant's ownership of several registrations in which the term "chronographs" appeared without further qualification in the identification); and *In re Loew's Theatres, Inc.*, 769 F.2d 764, 226 USPQ 865 (Fed. Cir. 1985) (examining attorney could properly refuse registration on ground that DURANGO for chewing tobacco is primarily geographically deceptively misdescriptive, even though applicant owned incontestable registration of same mark for cigars).

**Descriptiveness Refusal and Acquired Distinctiveness**

In view of our finding that the applied-for matter is generic, the refusal of registration must be affirmed. But in the event that our finding of genericness is reversed in any possible appeal, we address the alternative issue of whether

applicant's proposed mark is merely descriptive or whether the mark has acquired distinctiveness.

In response to the refusal pursuant to Section 2(e)(1) of the Trademark Act, on the ground that the applied-for mark is merely descriptive, applicant submitted evidence of acquired distinctiveness. "[W]here registration was initially sought on the basis of distinctiveness, subsequent reliance by the applicant on Section 2(f) assumes that the mark has been shown or conceded to be merely descriptive." *Yamaha International Corp. v. Hoshino Gakki Co. Ltd.*, 6 USPQ2d 1001 (Fed. Cir. 1988). *See also In re McIIhenny Co.*, 278 F.2d 953, 126 USPQ 138, 141 (CCPA 1960). Accordingly, applicant's claim of acquired distinctiveness is a concession that the mark is merely descriptive.[11]

Applicant's evidence of acquired distinctiveness consists of applicant's Registration No. 3439321 and the Declaration of Pat McCarley, Vice President of Development for applicant. The amount and character of evidence required to establish acquired distinctiveness depends on the facts of each case and particularly on the nature of the mark sought to be registered. *See Roux Labs., Inc. v. Clairol Inc.*, 427 F.2d 823, 166 USPQ 34, 39 (CCPA 1970); *In re Hehr Mfg. Co.*, 279 F.2d 526, 126 USPQ 381, 383 (CCPA 1960); *In re Gammon Reel, Inc.*, 227 USPQ 729, 730 (TTAB 1985).

---

[11] Applicant could have preserved for consideration in this appeal its objection to the descriptiveness refusal, by asserting acquired distinctiveness as an alternative claim. Since it did not, applicant is deemed to have conceded that the term is not inherently distinctive. *See In re Thomas Nelson, Inc.*, 97 USPQ2d 1712, 1713 (TTAB 2011).

15

As fully discussed, *supra, e*ach case must be decided on its own facts and neither the USPTO nor the Board is bound by the decision of the examining attorney who examined the application for the applicant's previously registered mark. *See In re Omega SA,* 83 USPQ2d at 1541. While Trademark Rule 2.41(b), 37 C.F.R. § 2.41(b), states that ownership of one or more prior registrations on the Principal Register may be accepted as prima facie evidence of distinctiveness, it is not always sufficient and further evidence may be required. *See In re Loew's Theatres, Inc.*, 769 F.2d 764, 226 USPQ 865, 869 (Fed. Cir. 1985) (The examining attorney and the Board considered LTI's registration but were unpersuaded as to the sufficiency of this proof alone...).

Typically, more evidence is required where a mark is so highly descriptive that purchasers seeing the matter in relation to the named goods or services would be less likely to believe that it indicates source in any one party. *See, e.g., In re Bongrain Int'l Corp.*, 894 F.2d 1316, 13 USPQ2d 1727, 1729 (Fed. Cir. 1990); *Alcatraz Media, Inc. v. Chesapeake Marine Tours Inc.*, 107 USPQ2d 1750, 1767 (TTAB 2013); *In re Seaman & Assocs., Inc.*, 1 USPQ2d 1657, 1659 (TTAB 1986); *In re Packaging Specialists, Inc.*, 221 USPQ 917, 919 (TTAB 1984).

In this case, the term CHURRASCOS, if not generic, is highly descriptive since it is the generic term for the type of barbequed steaks that are the specialty of applicant's restaurants. We therefore consider applicant's burden to show acquired distinctiveness to be especially high. As such, applicant's prior registration alone is not sufficient to establish distinctiveness. Further, the facts set forth in the

Declaration of Mr. McCarley do not convince us the term has acquired a secondary meaning as a mark. Mr. McCarley avers that from 2007-2011, applicant expended an average of $79,288 annually on "marketing, advertising and promotion of the Churrascos restaurant brand." McCarley Decl., p. 8. (Exhibit to Response dated May 8, 2012). While we acknowledge these advertising expenditures, the evidence fails to show that they were effective in educating relevant consumers that the term "churrascos" is a source indicator for restaurant services. *See* Trademark Manual of Examining Procedure (TMEP) § 1212.06(b) (Oct. 2013 ed.) ("The ultimate test in determining whether a designation has acquired distinctiveness is applicant's success, rather than its efforts, in educating the public to associate the proposed mark with a single source."). Indeed, applicant provided no evidence of how the money was spent. Applicant did not submit any advertisements, promotional material, or marketing material. The webpages reporting honors received by Chef Michael Cordua list all of the restaurants operated by Mr. Cordua and do not call out the alleged mark CHURRASCOS sufficiently for us to conclude that it resulted in the transformation of the name from a primary food offering of the restaurant to a service mark. And arguments that such a transformation occurred are undermined by, for example, the article entitled *The 20 Best Steaks in America,* discussed supra, in which the word "churrascos" is used generically as a type of barbequed steak.

Mr. McCarley also avers that applicant has had gross annual sales in excess of $8,000,000.[12] But sheer numbers alone are not necessarily enough to prove secondary meaning. *See In re Boston Beer Co. L.P.*, 198 F.3d 1370, 53 USPQ2d 1056 (Fed. Cir. 1999) (claim based on annual sales under the mark of approximately $85 million, and annual advertising expenditures in excess of $10 million, not sufficient to establish acquired distinctiveness in view of highly descriptive nature of mark); and *In re Tennis Indus. Ass'n.*, 102 USPQ2d 1671, 1682 (TTAB 2012). Despite the gross annual sales, there is no evidence of the extent to which the public perceives the term CHURRASCOS as indicating source in applicant. As such, upon review of the totality of evidence submitted by applicant, we find that applicant has not established that CHURRASCOS has acquired distinctiveness as a trademark for applicant's restaurant services.

We find the Federal Circuit's observation in *In re Pennington Seed, Inc.*, 466 F.3d 1053, 80 USPQ2d 1758 (Fed. Cir. 2006) to be apt in this case:

> While it is always distressing to contemplate a situation in which money has been invested in a promotion in the mistaken belief that trademark rights of value are being created, merchants act at their peril in attempting, by advertising, to convert common descriptive names, which belong to the public, to their own exclusive use. Even though they succeed in the creation of de facto secondary meaning, due to lack of competition or other happenstance, the law respecting registration will not give it any effect.

466 F.3d 1053, 80 USPQ2d at 1762 (quoting *Weiss Noodle Co. v. Golden Cracknel & Specialty Co.*, 290 F.2d 845, 129 USPQ 411 (CCPA 1961)).

---

[12] McCarley Decl., p. 9.

Decision: The refusal to register on the ground that the applied-for matter is generic is affirmed. The refusal to register on the ground that the applied-for matter is merely descriptive and has not acquired distinctiveness is affirmed.